IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PENNSYLVANIA NATIONAL             )
INSURANCE COMPANY,                )
                                  )
        Plaintiff,                )
                                  )
v.                                )        CASE NO. 3:15-cv-154-MHT-GMB
                                  )        [WO]
JAMES MUNFORD, *et al.*,          )
                                  )
        Defendants.               )

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is a Motion to Deem Requests for Admissions Admitted and for Summary Judgment filed by Plaintiff Pennsylvania National Insurance Company against *pro se* Defendant James Munford. Doc. 55. Pursuant to 28 U.S.C. § 636, this matter was referred to the undersigned United States Magistrate Judge for review and the submission of a report with recommended findings of fact and conclusions of law. Having reviewed the relevant portions of the record and the applicable case law, and for the reasons that follow, the undersigned recommends that the motion be GRANTED, as explained below.

## I. JURISDICTION

The court has subject-matter jurisdiction over the claims in this action under 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support jurisdiction and venue within the Eastern Division of the Middle District of Alabama.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant must first inform the court of the basis for its motion, at which point the burden shifts to the nonmoving party to demonstrate why summary judgment would not be proper. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jacobs v. Elec. Data Sys. Corp.*, 2006 WL 3742202, at *1 (M.D. Ala. Dec. 18, 2006).  The nonmoving party must affirmatively set forth specific facts showing a genuine dispute for trial and may not rest upon the mere allegations or denials in the pleadings. Fed. R. Civ. P. 56(c).

The court's role at summary judgment is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In making this determination, the court must view the admissible evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of that party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  STATEMENT OF FACTS

This is a subrogation action wherein Plaintiff Pennsylvania National Insurance Company ("Penn National") seeks to recover the insurance proceeds paid to its insured, Goodson Funeral Homes, Inc. ("Goodson" or the "Funeral Home") for property damages resulting from a fire that occurred at the Funeral Home on May 18, 2014, when *pro se*

Defendants Munford and Jeffery Easley[1] were working.

## A.    Facts

Munford was hired by Goodson to strip and to refinish the hardwood floors at its funeral home in Roanoke, Alabama.  Munford asked his codefendant, Easley, to help him with the project. Doc. 38 at ¶ 6; Doc. 56-1 to -2.  Munford and Easley performed the work on May 18, 2014, at approximately 6:00 p.m. Doc. 38 at ¶ 7; Doc. 56-1 to -2.  Around the same time, the Funeral Home caught fire and was completely destroyed. Doc. 38 at ¶ 9. Pursuant to a policy of insurance Penn National issued to Goodson, Penn National paid Goodson $495,000 for the resulting damage. Doc. 38 at ¶ 11.

## B.    Procedural History

Penn National filed a complaint against Munford and Easley on March 10, 2015, asserting claims for negligence, breach of contract, and breach of the implied warranty of workmanship. Doc. 1.   Munford answered the complaint and denied liability. Doc. 6. Easley never answered or otherwise responded to the complaint.

On March 11, 2016, the court ordered Penn National to move for a default judgment against Easley (who, at the time, was identified as Jeffrey Easy), to move to dismiss its claims against him, or to dismiss the case in its entirety. Doc. 29.  Penn National applied

---

[1] There is confusion in the record as to Defendant Easley's proper name.  The original complaint named Jeffrey Easy.  And although Penn National's first amended complaint, which is the operative pleading in this matter, names Jeffrey Easley as a defendant, the returns of service indicate that his name is actually Jeffery Easley. Docs. 7, 36 & 40.  Thus, it is ORDERED that the Clerk of Court change Defendant Easley's name on the docket sheet from Jeffrey Easley to Jeffery Easley.  The court will refer to this defendant as Jeffery Easley in this recommendation and during any further proceedings.

to the Clerk of Court for an entry of default, but the application was denied because service of the complaint had been issued to and signed for by Jeffery Easley—not Jeffrey Easy. As a result, Penn National requested and was granted leave to amend the complaint to correct this defendant's name. Docs. 33 & 37.

Penn National filed its amended complaint against Munford and Easley on June 1, 2016, reasserting claims for negligence, breach of contract, and breach of the implied warranty of workmanship. Doc. 38.  Easley answered the amended complaint on June 30, 2016 and denied liability. Doc. 41.  Since that time, however, Easley has not participated in the litigation, yet Penn National has not sought a default or summary judgment against him even though the deadline to file dispositive motions has passed. Doc. 50.   On September 8, 2016, Munford answered the amended complaint and also denied liability. Doc. 46.

On February 28, 2017, Penn National issued fourteen requests for admission to Munford and Easley. Doc. 56-1.  On March 11, 2017, Munford mailed his responses to Penn National. Doc. 56-2.  The record does not reflect that Easley responded to Penn National's requests for admission.

The evidence supporting Penn National's pending motion reflects that Munford timely answered the first nine requests for admission as follows:

1.    Admit that Munford and Easley were hired by Goodson Funeral Home, Inc. to strip and refinish the hardwood floors of the funeral home located at 425 Chestnut Street, Roanoke, Alabama, 36274 (the "Funeral Home").

ANSWER:   The Defendant admit that We were hired by an employee of the Goodson funeral home (Sheffton

Goodson to do labor work at Goodson funeral home.

2.      Admit that Munford and Easley undertook to strip and refinish the hardwood floors of the Funeral Home on or about May 18, 2014.

      ANSWER:  Admit we did take the job to do the floors at Goodson funeral home and the co-owner was made aware that we have never done this type of labor in the past.

3.      Admit that Munford and Easley had a duty to act carefully when stripping and refinishing the floor of the Funeral Home.

      ANSWER:  Admit we did read the warning labor on the can of stripping compound.

4.      Admit that Munford and Easley were aware that floor stripping and refinishing product was flammable prior to stripping and refinishing the hardwood floors at the Funeral Home on or about May 18, 2014.

      ANSWER:  Admit we did follow directions but was not aware of any thing that would cause a fire.

5.      Admit that Easley smoked a cigarette near the back door of the Funeral Home while stripping and refinishing the floor on or about May 18, 2014.

      ANSWER:  Admit that Mr. Easley did smoke on the outside of the building, however the work had not begun at that time.

6.      Admit that Munford and Easley failed to ensure that all electrical devices were unplugged in the Funeral Home prior to stripping and refinishing the hardwood floors at the Funeral Home on or about May 18, 2014.

      ANSWER:  Admit that all devices that we were made aware of were disconnected before work had started.

7.      Admit that Munford and Easley did not identify a small refrigerator in the break room of the Funeral Home prior to stripping and refinishing the floor on or about May 18, 2014.

      ANSWER:  admit that we could not identify refrigerator due to the fact we had no knowledge that one was in the building.

We were working in the hallway not the breakroom.

8.      Admit that it is a reasonably safe practice when using flammable floor stripping products to identify and shut the power source off to all electronic devices with motors in the vicinity of the flammable product.

        ANSWER:   We were not in control exclusive in the building.

9.      Admit that Munford and Easley identified some electronic devices and shut off power to such devices in the Funeral Home prior to using flammable floor stripping products on or about May 18, 2014.

        ANSWER:   All other items we had no knowledge of and should not be held liable for the damage to the building.

Doc. 56-1 to -2.  Munford, however, did not answer or respond in any way to the remaining

five requests for admission, including:

10.     Admit that Munford and Easley were the only two people at the Funeral Home when stripping and refinishing the hardwood floors at the Funeral Home on or about May 18, 2014.

11.     Admit that Munford and Easley were in exclusive control of the Funeral Home in which they stripped and refinished the hardwood floors on or about May 18, 2014.

12.     Admit that Munford and Easley were informed that the cause of the fire at the Funeral Home was the flammable vapors of the floor stripping product coming into contact with a heat source from a cigarette or small refrigerator.

13.     Admit that Munford and Easley were responsible for causing the fire at the Funeral Home on or about May 18, 2014.

14.     Admit that Penn National paid Goodson Funeral Home, Inc. $495,500 for the claim submitted as a result of the fire that occurred in the Funeral Home on or about May 189, 2014.

Doc. 56-1 to -2.

On April 24, 2017, Penn National filed its motion to deem requests for admission admitted and for summary judgment on its negligence claim against Munford. Docs. 55 & 56.  Munford responded to the motion on May 4, 2017, and Penn National replied on May 8, 2017. Docs. 58 & 59.  The motion is now fully briefed and ripe for resolution by the court.

## IV.  DISCUSSION

The court will first address the portion of Penn National's motion requesting that the court deem admitted the requests for admission to which Munford did not timely respond.  Federal Rule of Civil Procedure 36, which governs requests for admission, provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or attorney." Fed. R. Civ. P. 36(a)(3).  "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

Munford answered Penn National's first nine requests for admission but failed to answer the last five. *See* Doc. 56-1 to -2.  Penn National argues that Munford's failure to answer requests for admission Nos. 10 through 14 means that the allegations and facts contained in these requests are undisputed and should be considered admitted as a matter of law.  Penn National further argues that, when combining these admissions with the answers Munford provided to requests for admission Nos. 3 and 4, there can be no dispute that Munford acted negligently when performing the work for which he was hired, and thus

summary judgment should be entered in Penn National's favor on its negligence claim against Munford.

The court ordered Munford to respond to both aspects of Penn National's current motion—the motion to deem requests for admission admitted and the motion for summary judgment. Doc. 57.  Munford's response to Penn National's motion, however, does not mention or address in any way his failure to answer the last five requests for admission propounded by Penn National, nor does he oppose the entry of summary judgment on that basis. Doc. 58.  In fact, Munford does not oppose in any way Penn National's motion to deem the requests for admission admitted, and to date requests for admission Nos. 10 through 14 remain unanswered by Munford.

Courts in this circuit routinely treat requests for admission admitted as a matter of law when a party fails to answer a request in a timely manner. *E.g.*, *Garmely v. Cochran*, 651 F. App'x 933, 936 (11th Cir. 2016) (citing *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002)).  "Once an issue is deemed admitted, the admission is conclusive unless withdraw upon motion to the court." *Jacobs v. Elec. Data Sys. Corp.*, 2006 WL 3742202, at *3 (N.D. Ala. Dec. 18, 2008) (citing *Perez*, 297 F.3d at 1263; *United States v. 2204 Barbara Lane*, 960 F.2d 126, 129 (11th Cir. 1992); *Stubbs v. Comm'r*, 797 F.2d 936, 937–38 (11th Cir. 1986) (per curiam)).

Munford answered Penn National's requests for admission Nos. 1 through 9 but did not answer requests for admission Nos. 10 through 14.  There is no explanation in the record for Munford's failure to answer these requests, and there is no dispute that he had multiple opportunities to answer them but failed to do so.  Munford has made no attempt

to rectify this failure—indeed, he has not even mentioned or addressed the unanswered requests in his response to Penn National's motion.  He also has not sought any relief from the court by way of a motion to withdraw or to amend his answers, and he has not presented the court with argument or authority to warrant a *sua sponte* withdrawal of his admissions. *See Jacobs*, 2006 WL 3742202, at *2 ("As Rule 36(b) expressly provides for withdrawal only 'on motion,' the court will not *sua sponte* withdraw [the plaintiff's] admissions or set aside the order of the magistrate judge.").

Munford's status as a *pro se* defendant does not relieve him of his duty to comply with the procedural rules of the court.  "The Eleventh Circuit has recognized that Rule 36 should be applied against parties proceeding *pro se* when the party received actual notice of the requests for admission and failed to respond to them." *Manfred v. Everett*, 2006 WL 1627062, at *2 n.1 (N.D. Ga. June 9, 2006) (citing *2204 Barbara Lane*, 960 F.2d at 129; *Stubbs*, 797 F.2d at 938 n.1).  Munford cannot and does not claim that he did not have actual notice of Penn National's requests for admission given that he answered the first nine.  He simply chose not to respond to the remaining five, and he did so to his detriment.

Based on the foregoing, the undersigned recommends that the court GRANT the portion of Penn National's motion requesting that its requests for admission Nos. 10 through 14 be deemed admitted and that the following facts and allegations be considered admitted and undisputed on summary judgment:

- Munford and Easley were the only two people at the Funeral Home when stripping and refinishing the hardwood floors at the Funeral Home on or about May 18, 2014.

- Munford and Easley were in exclusive control of the Funeral Home in which they stripped and refinished the hardwood floors on or about May 18, 2014.[2]

- Munford and Easley were informed that the cause of the fire at the Funeral Home was the flammable vapors of the floor stripping product coming into contact with a heat source from a cigarette or small refrigerator.

- Munford and Easley were responsible for causing the fire at the Funeral Home on or about May 18, 2014.

- Penn National paid Goodson Funeral Home, Inc. $495,500 for the claim submitted as a result of the fire that occurred in the Funeral Home on or about May 18, 2014.

*See Cardinal Health 108, LLC v. Hemacare Plus, Inc.*, 2017 WL 114405, at *2–6 (S.D. Ala. Jan. 11, 2017) (deeming requests for admission admitted when defendant did not answer the requests and did not address its failure to answer in response to plaintiff's summary-judgment motion).[3]  The court will resolve Penn National's summary-judgment motion in light of these admissions.

---

[2] Munford's silence in response to request for admission No. 11 effectively admits that he and Easley were in exclusive control of the Funeral Home on May 18, 2014.  However, the court also recognizes that, in response to request for admission No. 8—asking Munford to "[a]dmit that it is a reasonably safe practice when using flammable floor stripping products to identify and shut the power source off to all electronic devices with motors in the vicinity of the flammable product"—Munford denied being in exclusive control of the Funeral Home on the day in question.  Doc. 56-1 to -2.  As an initial matter, Munford's answer to request for admission No. 8 is non-responsive to the actual request.  However, even if Munford's answer to this request for admission creates a factual question as to whether Munford was in exclusive control of the Funeral Home on the day of the fire, this dispute is not material to the resolution of Penn National's summary-judgment motion on its negligence claim against Munford because, as explained below, there is no dispute that Munford owed a duty to Goodson, that he breached that duty, and that his breach proximately caused Goodson's damages.

[3] The court recognizes "the potential harshness of this result.  The failure to respond to admissions can effectively deprive a party of the opportunity to contest the merits of a case.  This result, however, is necessary to insure the orderly disposition of cases; parties to a lawsuit must comply with the rules of procedure." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987).  Moreover, the harshness of this result is "tempered by the availability of the motion to withdraw admission, a procedure which

Penn National seeks the entry of a summary judgment in its favor only on its negligence claim against Munford.[4]  Having considered the record evidence, including Munford's admissions by virtue of his failure to answer Penn National's requests for admissions Nos. 10 through 14 and his actual answers to request for admissions Nos. 1 through 9, along with the parties' arguments and the applicable legal authority, the court concludes that summary judgment is due to be entered in Penn National's favor on its negligence claim against Munford.

To prevail on a claim of negligence under Alabama law, a plaintiff must prove "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994).[5]  Moreover, "[i]t is a general rule in contracts for work or services that there is implied a duty to perform with that degree of skill or workmanship which is possessed by those of ordinary skill in the particular trade for which one is employed." *C.P. Robbins & Assocs. v. Stevens*, 53 Ala. App. 432, 436 (Ala. Civ. App. 1974).

Munford's answers and admissions to Penn National's requests for admission establish that there is no genuine dispute that he acted negligently when refinishing the Funeral Home's floors on May 18, 2014.  With respect to the element of whether a duty was owed, Munford admits that he was hired by Goodson "to do the floors" and that he

---

[Munford] did not employ," despite being informed of his obligations, even as a *pro se* party, to comply with the Federal Rules of Civil Procedure. *Id.*

[4] Accordingly, this report and recommendation does not address Penn National's claims against Munford for breach of contract and breach of the implied warranty of workmanship, and those claims remain pending before the court.  Likewise, all claims against Easley remain pending.

[5] A federal court sitting in diversity applies the substantive law of the forum state. *See, e.g.*, *Admiral Ins. Co. v. Feit Mgmt. Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003).

had never done this type of work in the past. Docs. 46 & 56-1 to -2. He further admits that he read the warning label on the can of stripping compound and that he was aware of the flammable nature of this product. Doc. 56-1 to -2. Thus, there is no dispute that Munford contracted with Goodson to perform the refinishing work on the day of the fire, and therefore he undertook a duty to perform that work with the degree of skill or workmanship that is possessed by those of ordinary skill in that particular trade (*i.e.*, floor refinishing).

With respect to the other elements of Penn National's negligence claim—breach, proximate causation, and damages—Munford has admitted to each of these elements by virtue of his failure to respond to Penn National's requests for admission. Specifically, Munford has admitted that he and Easley were the only two people at the Funeral Home when stripping and refinishing the floors on May 18, 2014; that he and Easley were responsible for causing the fire at the Funeral Home on May 18, 2014; and that Penn National paid Goodson $495,000 for the claim submitted as a result of the damages caused by the fire on May 18, 2014. Doc. 56-1–2. These admissions establish, without contradiction by Munford, that he breached his duty to Goodson, that this breach proximately caused the fire, and that Penn National paid $495,000 to Goodson for the resulting damages.

Munford's admissions under Rule 36 are conclusive as to the matters admitted and cannot be overcome at the summary-judgment stage by other contradictory evidence in the summary judgment record or his own unsworn allegations in response to Penn National's motion. *See Cardinal Health*, 2017 WL 114405, at *3 (internal quotation marks

and citations omitted).  Indeed, the court explained to Munford in its summary-judgment briefing order that a party opposing a motion for summary judgment cannot rely on his pleadings but must oppose the motion by filing sworn affidavits that demonstrate that there is a genuine issue of material fact for trial; the court further warned that a failure to present evidence may mean that the court accepts the moving party's evidence as truth. Doc. 57.  Despite these directives and explanations, Munford has not submitted any affidavits or other evidence to establish a genuine issue for trial, and Penn National's evidence remains undisputed.  Therefore, having established a *prima facie* negligence claim, and without a genuine dispute of material fact for trial, the court concludes that summary judgment is due to be entered in Penn National's favor on its negligence claim against Munford.

## V.  CONCLUSION

For the reasons set forth above, the undersigned RECOMMENDS that Penn National's motion to deem requests for admission admitted and for summary judgment (Doc. 55) be GRANTED.  Accordingly, the court RECOMMENDS that (1) the facts and allegations contained in Penn National's requests for admission Nos. 10 through 14 be deemed admitted as a matter of law, and (2) summary judgment be granted in favor of Penn National and against Munford with respect to Penn National's negligence claim against Munford.  Penn National's claims against Munford for breach of contract and breach of the implied warranty of workmanship should remain pending and proceed to trial.

It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation no later than **October 26, 2017**.  Any objections filed must

specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the district court. The parties are advised that this report and recommendation is not a final order of the court, and therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the district court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 12th day of October, 2017.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE